FARMERS UNDERWRITERS ASSOCIA-
TION, a corporation, and Farmers Insurance Exchange, a reciprocal inter-insurance exchange, Plaintiffs,

v.

Lucille Cornett FALES, Irene Jewel Casey and Jimmy Casey, Defendants.

No. 9709.

United States District Court
W. D. Missouri, W. D.
May 24, 1956.

Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., for plaintiffs.

Edward Aylward and I. I. Ozar, Kansas City, Mo., for defendants.

DUNCAN, Chief Judge.

This is a declaratory judgment action brought under §§ 2201–2202 et seq., Title 28 U.S.C.A., to determine the liability of the plaintiffs under a policy of liability insurance issued by them to the defendant Lucille C. Fales. The plaintiffs ask the court to "declare that the legal liability of the defendant Lucille Cornett Fales to the said Irene Jewel Casey and Jimmy Casey, if any, arising out of the aforesaid explosion and injuries, is not insured against by the aforesaid policy and endorsement," and "That plaintiffs are under no duty or obligation to defend any suits which may be brought by Irene Jewel Casey or Jimmy Casey against the said Lucille Cornett Fales arising out of the aforesaid explosion and injuries."

The policy of insurance issued by the plaintiffs to the defendant Fales carries a comprehensive liability endorsement, which is the only part of the policy with which we are concerned here, and which carries an exclusion clause as follows:

"* * * to bodily injury to or sickness, disease or death of (2) any employee of the insured, other than a residence employee, while engaged in the employment of the insured, unless assisting him in his personal sports activities; or (b)

any residence employee of the insured while engaged in the employment of the insured (1) if benefits for such bodily injury, sickness, disease or death are either payable or required to be provided under any workmen's compensation law, or (2) if the insured has in effect on the date of the occurrence a policy providing workmen's compensation benefits for such employee; * * * ".

The defendant Irene Jewel Casey was an employee of the defendant Fales in her restaurant and was injured as a result of an explosion while she was temporarily in the apartment of the defendant Fales.

After the filing of this suit on April 7, 1955, and pleadings filed by all of the defendants, the defendant Irene Jewel Casey instituted suit in the Circuit Court of Jackson County, Missouri, for damages growing out of the explosion, alleging negligence on the part of the defendant Fales. Under the policy, the plaintiffs agreed to pay to the insured Fales—"all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * ".

Subsequent to the filing of this suit, the defendant Fales filed an answer in the nature of a general denial. The other defendants filed a Motion to Dismiss on the ground that the complaint presented "a novel question of law upon which a decision of the state court should be obtained." This court being unable to find any "novel question" presented by the issues, overruled the Motion to Dismiss. Later, the defendants Casey filed an answer in which they stated that the complaint states no claim upon which relief can be granted, and that it does not allege a justiciable controversy, and denied the other allegations of the complaint.

On the day following the filing of this answer, plaintiffs filed a motion under Rule 57, Fed.Rules Civ.Proc., 28 U.S.C.A., asking the court to advance the case on the calendar and for a trial setting, which was denied. On October 6, 1955, the plaintiffs filed a motion to strike the answer and for judgment, alleging that the defendants had failed to appear to give their depositions pursuant to legal notice served by the plaintiffs. This motion was later overruled as to the defendants Casey, and sustained as to the defendant Fales, she having failed and refused to appear for the purpose of giving her deposition.

On November 10, 1955, the defendant Irene Jewel Casey obtained judgment by default against the defendant Fales in the Circuit Court of Jackson County, Missouri, in the sum of $15,000 and costs, and on December 28, 1955, the said defendant, pursuant to execution issued on the judgment against the defendant Fales, propounded interrogatories to the plaintiffs. The insurance companies did not defend the action in the State Court, and defendant Fales filed no answer, thus resulting in the default judgment. The interrogatories in the State Court have not been answered because of the pendency of the action in this court.

On the same day the interrogatories were filed in the State Court, the defendant Casey filed a Motion to Dismiss on the ground that plaintiffs had an opportunity to present any defenses they might have to the claim of Irene Jewel Casey in the State Court, or, in the alternative, they asked leave to file an amended answer and counterclaim.

Thereafter, on February 5, 1956, the Motion to Dismiss was overruled and defendant Irene Jewel Casey filed her answer and counterclaim. In her counterclaim said defendant prays judgment in the sum of $15,000 with interest, the amount of the judgment in the State Court.

The plaintiffs agreed to the filing of the counterclaim and set up by way of reply, the provisions of the policy heretofore set out, and alleged that at the time of her injuries, she was engaged in the performance of her duties as a waitress in insured's restaurant.

It was upon this state of the record that the case came on for trial, although

the defendants submit to the jurisdiction of this court with outspoken reluctance, insisting that the question should be left to the determination of the State Court in the garnishment proceeding there.

■ It has been the general practice of this court to decline to consider the question of liability of insurance companies in cases of this type where they have an adequate remedy at law, especially where such actions are brought after an action is brought in the State Court against the insured, and where no right to proceed against the insured has accrued to the third party. However, this case presents some exceptional circumstances prior to the entering of the default judgment in the State Court. The answer of defendant Fales had been stricken from the record and default had been entered against her and plaintiffs became entitled to a judgment against her in accordance with the prayer of their petition, but before such judgment was proven up, defendants had obtained their judgment in the State Court by default against her, and had filed their counterclaim in this case.

In view of this state of the pleadings, the same issues are present for consideration that would be before the State Court. The same evidence would be considered by this court in determining the plaintiffs' liability to defendant Casey as would be submitted to the State Court, and the same questions of law involved as would be present in determining the liability of plaintiffs in the garnishment proceedings in the State Court.

■ Considering all of these factors, it would appear to be the responsibility of this court, which should not be evaded by exercising the discretion authorized by the statute, and refuse to decide it. In view of the present state of the record, the question is moot as to insured Fales. No judgment which might now be rendered against her would affect any rights of defendant Irene Jewel Casey since her judgment against Fales

has become final. So, the issues now are solely between the plaintiffs and Irene Jewel Casey under V.A.M.S. § 379.195 which provides:

"1. In respect to every contract of insurance made between an insurance company, person, firm or association, whether a stock, a mutual, a reciprocal or other company, association or organization, and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death or damage to property by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty *covered by such contract of insurance,* the liability of the insurance company, *if liability there be,* shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, or if the insured becomes insolvent or discharged in bankruptcy during the period that the policy is in operation or any part is due or unpaid, occasioned by said casualty. (Emphasis supplied.)

"2. No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."

■ Under this statute, the question is whether the casualty is "covered by the contract of insurance." Of course, under the statute, all the defenses which the plaintiffs may have had against their insured Fales are good against the holder of the judgment against Fales. Casey is entitled to recover "if liability there be."

The method of procedure in the collection of such a judgment is provided in V.A.M.S. § 379.200. It is not disputed

that defendant Casey was severely injured and burned as the result of a gas explosion in the apartment of the defendant Fales, but the circumstances under which she was present in the apartment are in dispute. Defendant Irene Jewel Casey had been working in the Fales restaurant on the day of the injury and had gone to the apartment above the restaurant to leave the day's receipts. While there, she started to light a cigarette and the flash from the match caused an explosion of escaped gas.

Although the defendant Irene Jewel Casey does not deny that she was employed by the insured as a waitress in her restaurant on the day of the explosion, she does deny that such relationship existed at the time of her injury. It is her contention that when she closed the restaurant and left the premises, she was no longer an employee.

To establish their contention, plaintiffs introduced in evidence certain admissions against interest of Mrs. Fales and Mrs. Casey. Shortly after the explosion, Mrs. Fales gave to the adjuster of plaintiffs her written statements which were identified and admitted in evidence against Mrs. Fales alone. In one of those statements, Mrs. Fales said she employed Mrs. Casey as a waitress; that when she worked the late shift, she closed the restaurant and always took the receipts upstairs to her apartment before she left. Since defendant Irene Jewel Casey is now the only party in interest in this case, the statements of Mrs. Fales are of no value to us. They are not binding on Mrs. Casey and the issues as to Mrs. Fales are moot. So it must be from the testimony and evidence of Mrs. Casey herself that the facts are determined.

Plaintiffs introduced in evidence a statement of Mrs. Casey taken on January 12, 1955, while she was still in the hospital. She had been injured three weeks before. The questions were asked her by a representative of the insurance companies, and the answers were taken by a shorthand reporter. The statement was not signed, but was certified to by the reporter, who also testified to the correctness of the transcript. The transcript reveals that the statement was taken in the presence of her husband, and several times he volunteered some information.

In her statement Mrs. Casey stated that she had worked for Mrs. Fales off and on for about three years—not steady —"sometimes for a couple of months and sometimes a couple of weeks"—"Sometimes I worked the morning shift and sometimes the evening shift."

"Q. Now, that explosion and fire, that was—what date was that? A. The 22nd, I believe.

"Q. The 22nd of December? A. Yes.

"Q. Were you alone in the building at the time? A. Yes.

"Q. Was there anyone else—had anybody else been there that evening? A. Well, not that I know of. You see, I was working downstairs in the cafe.

"Q. I see. A. And it happened upstairs after I had locked the door and took the money upstairs.

"Q. You were closing up that night? A. Yes.

"Q. What time do you usually close? A. Nine.

"Q. Does Mrs. Fales usually stay there in the evenings or were you— A. (Interrupting.) Well, most generally she was there, but, see, they had gone somewhere that day. I think they went Christmas shopping or somewhere, and she wasn't home, and I was to take the money up there and leave it, and I was to open the next morning.

"Q. What time did Mrs. Fales leave? A. Oh, I don't know. I don't know what time it was.

"Q. Did you always take the money up in the evening? A. If I worked that shift, yes.

"Q. If you worked in the evening shift? A. Yes.

"Q. You always took it up? A. Yes."

Again on page 7 of her statement, she stated:

"Q. And whenever you worked in the evening, you always did bring up the money? A. Yes.

"Q. Was that all you were going to do that night? A. Yes.

"Q. Is leave the money there? A. Yes.

"Q. And then you were going to go on home? A. Yes.

"Q. You already had the place locked up? A. Yes."

Later in her statement she again stated:

"Q. (By Mr. Vanden Boom.) When Mrs. Fales left that night, was there anybody else in the cafe? A. Do you mean anybody working with me? A. Yes.

"Q. Yes. A. No.

"Q. You were left there alone? A. Yes. It is very slow in the evenings and most generally just one girl works that shift. There has been so many of them getting laid off down there it is slow."

At the time of the trial, Mrs. Casey testified that she had come to Kansas City from where she was then living out of the city, to visit her husband who was working in Kansas City, for a few days before December 22; that she and her husband had gone to the restaurant of Mrs. Fales, where she had formerly worked off and on, to have breakfast and in a conversation with Mrs. Fales, she was asked if she could help out for a few days, and she promised to do so. That on the day of her injuries, she had gone to work at 12:30 and worked through until closing time at 8:45 or 9:00 o'clock.

Sometime later in the afternoon, Mrs. Fales and her husband and some other persons decided to go Christmas shopping, thus leaving Mrs. Casey in charge of the restaurant. Mrs. Casey says that after giving her some instructions, Mrs. Fales asked her if she would do her a favor and take the money home with her. In this testimony Mrs. Casey is corrob-orated by at least two persons who were then in the restaurant, and claimed to have overheard the conversation; when she did close up the restaurant she took the day's receipts and started home.

It is to be inferred from the testimony, that it was her intention to return for the early shift the next morning, but she stated she was ailing, and when a half block from the restaurant on her way home with the money, she decided she would not return early the next morning and would go back and put the money in Mrs. Fales' apartment; that as she entered the apartment, she struck a match to light a cigarette, and the explosion occurred. She also testified that the day of the explosion was the first time she had ever worked the late shift and had never taken the money to the apartment before. Her testimony is entirely different from her statement made in the hospital. She attempts to explain the very great variance by saying that she was under the influence of sedatives while in the hospital, and was not conscious of what she was saying. Her answers do not seem to reflect any lack of understanding of the questions asked her. Her answers were clear and to the point. Her husband was present, and at times volunteered information. The reporter who took the questions and answers and made the transcript testified that she apparently was rational and understood what was going on.

In her statement she very clearly admits the employment in the restaurant and the practice of leaving the money in the apartment when she closed for the night. In her testimony she denies that she ever worked that shift, or left the money in the apartment before the night of her injury. Except for the fact that she felt ill and would not return the next morning, she had no reason to return after proceeding on her journey a half block before deciding to return and put the money in the unlocked apartment without any prior understanding with her employer.

Her first story seems to be entitled to greater weight and is accepted as the

one most likely to be true. But, even assuming the correctness of her testimony at the trial, I am unable to see how plaintiffs can be liable. I think it cannot be successfully contended, in view' of all the evidence, that Mrs. Casey was not an "employee" of Mrs. Fales in her restaurant on the day of her unfortunate injury. As such she was not covered by the policy.

If she was to be responsible for the day's receipts by taking them home for safe-keeping, she was still in the performance of her duties. On her journey home she was not a stranger, nor did she become one by suddenly changing her mind and deviating from her responsibility to take the receipts home, and instead, placing them in her employer's apartment.

In view of the finding, I must conclude that the casualty suffered by Irene Jewel Casey was not covered by the policy, and that there is no liability against the plaintiffs to pay the judgment rendered in her favor against Fales.

Decree in accordance herewith may be submitted within ten days.